IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRIAN HUTCHINSON, | CV 19–195–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| CITY OF THOMPSON FALLS, | |
| Defendant. | |

In anticipation of the trial set for February 22, 2021, the parties have each filed opposed motions in limine.  (Docs. 34, 39, 44.)  Because the Court recited this case's factual background when it denied Defendant City of Thompson Falls' ("the City") motion for summary judgment (Doc. 33 at 2–8), it will not do so again here.  Instead, the Court will repeat only the facts necessary to make sense of its rulings.

## INTRODUCTION

The City moves to exclude evidence and argument regarding any job openings it posted after firing Plaintiff Brian Hutchinson.  (Doc. 34.)  The City also moves to preclude Hutchinson from presenting evidence that it told him to use his accrued vacation and sick leave before filing a claim for workers' compensation benefits.  (Doc. 39.)  For his part, Hutchinson moves in limine to exclude: (1) evidence concerning his disciplinary and performance record; and (2) the

introduction of the Montana Human Rights Bureau's Final Investigative Report, Notice of Dismissal and Notice of Right to File Civil Action in District Court, and its May 30, 2019 "No Reasonable Cause" letter.  (Doc. 44.)

For the following reasons, the Court denies the City's motion regarding job openings and grants its motion related to its statements about the prerequisites to filing for workers' compensation benefits.  The Court grants in part and denies in part Hutchinson's motion regarding his disciplinary and performance records. Finally, the Court grants Hutchinson's motion as it relates to the Montana Human Rights Bureau materials.

## LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area."  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Although the Federal Rules of Evidence do not explicitly prescribe it, the Supreme Court authorizes trial judges to rule on motions in limine pursuant to their authority to manage trials.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  By ruling in limine, the court "gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury."  *Id.* at 1111–12.

"A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules."  *Sprint/United Mgm't Co. v. Mendelsohn*,

552 U.S. 379, 384 (2008) (citation omitted).  Still, a motion in limine should not be used to resolve factual disputes or weigh evidence.  *See C & E Servs., Inc. v. Ashland, Inc.*, 539 F.Supp.2d 316, 323 (D.D.C. 2008).  Instead, "the evidence must be inadmissible on all potential grounds" to exclude it on a motion in limine.  *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context."  *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp.1398, 1400 (N.D. Ill. 1993).[1]

Finally, the Court reminds the parties that rulings in limine are provisional.  "[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## ANALYSIS

The City and Hutchinson base their respective motions in limine exclusively on the grounds of irrelevance, pursuant to Federal Rule of Evidence 402, and the

---

[1] The Court recognizes that several cases cited in this paragraph come from outside the Ninth Circuit.  However, the Ninth Circuit has cited this collection of authority as properly "setting forth the standards applicable to motions in limine."  *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (citing *Goodman v. Las Vegas Metro. Police Dept.*, 963 F.Supp.2d 1036, 1046–47 (D. Nev. 2013)).

dangers that may outweigh the admission of relevant evidence, as set out in Federal Rule of Evidence 403.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Whether a fact is "of consequence" "is determined by the substantive law which governs the action." *United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986). In this case, then, the Americans with Disabilities Act ("ADA") determines whether evidence is "of consequence."

Even if evidence is relevant, a court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Relevant evidence should be excluded under Rule 403 only sparingly, as "the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (citation omitted).

With Rules 402 and 403 in mind, the Court considers each motion in limine in turn, beginning with the City's motion to exclude evidence of the jobs that opened after it fired Hutchinson.

## I.    Post-Termination Job Openings

As detailed in the Court's summary judgment order, this case turns on whether Hutchinson is "qualified" within the meaning of the ADA.  (*See generally* Doc. 33.)  An individual is qualified if he can perform the essential functions of his current position or a reassignment position with or without reasonable accommodation.  42 U.S.C. § 1211(8); *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).  The ADA obligates an employer to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  Still, the law does not "demand action beyond the realm of the reasonable."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002).

At the time he was fired, Hutchinson requested accommodation in the form of unpaid leave, which the City denied as unreasonable.  (Doc. 18 at 22–29.)  Indeed, as the City puts it, "the question of whether [] Hutchinson's requested accommodation of leave without pay was reasonable is *the* primary issue in this case."  (Doc. 49 at 9 (emphasis in original).)  "[W]here a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified

under the ADA." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001). Furthermore, "[t]he ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation," only that it could plausibly enable him to adequately perform the job. *Id.* at 1136 (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989)).

In its first motion in limine, the City asks the Court to exclude evidence regarding "any job openings [it] posted . . . at any time after the City terminated [] Hutchinson's employment as a police patrol officer on June 11, 2018." (Doc. 35 at 1–2.) Specifically, the City seeks preclusion of evidence related to the "Receptionist-City Clerical Pool" position it posted on August 30, 2018 and the "City Court Clerk/Assistant Clerk PT" job it posted on December 13, 2018. (*Id.* at 2.) Primarily arguing that these job postings are irrelevant and confusing, the City adds that Hutchinson failed to disclose an expert to testify that he would have been released to work, anyway.

The City first contends that the post-termination job openings are irrelevant to Hutchinson's failure to accommodate claims because they "occurred long after [his] termination." (Doc. 50 at 3.) However, the authority the City cites fails to convince the Court that the ADA imposes a firm temporal limit to the relevance of

job openings to which a disabled employee could have been reassigned upon his return from unpaid leave.  *See Humphrey*, 239 F.3d at 1135–36.

True, the Second and Tenth Circuits have tethered a vacant position's existence to the time at which the disabled employee seeks accommodation.  *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (stating that the position must be open "at or around the time when accommodation was sought"); *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999) (the job must be available "at or about the time" the ADA plaintiff requests reassignment).  However, neither the Second nor Tenth Circuit courts specify when a vacancy occurs outside the "around" or "about" window.  And, the City's effort to read out the "around" or "about" qualification by way of a United States Magistrate Judge's report and recommendation is unpersuasive.  (Doc. 50 at 2 (citing *Mack v. Georgetown Univ.*, 15-CV-793 (RMC/GMH), 2017 WL 4325596, *15 (D.D.C. 2017)).).  There, the judge ultimately relied on Tenth Circuit authority that predates *Taylor*.  *Mack*, 15-CV-793 (RMC/GMH), 2017 WL 4325596, *15 (citing *Alston v. Wash. Metro. Area Transit Auth.*, 571 F.Supp.2d 77, 84 (D.D.C. 2008) (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1170 (10th Cir. 1999))).  None of the authorities the City proffers support the proposition that job openings that occur two or six months after the employee seeks accommodation firmly fall outside the temporal window of relevance.

Instead, the timing issue as it relates to the job openings is one of weight, not relevance. The regulations that implement the ADA state only that a reasonable accommodation "may include . . . reassignment to a vacant position." 29 C.F.R. § 1630.2(o)(2)(ii). In the Appendix to Part 1630, the Equal Opportunity Employment Commission ("the Commission") "addresses the major provisions of this part and explains the major concepts related to disability-based employment discrimination." 29 C.F.R. Pt. 1630, app. to § 1630.2(o). There, the Commission explains that "[e]mployers should reassign the [disabled] individual to an equivalent position . . . if the position is vacant within a reasonable amount of time." *Id.* "A 'reasonable amount of time[,]'" the Commission says, "should be determined in light of the totality of the circumstances." *Id.* It goes on to provide the following example:

> [S]uppose there is no vacant position available at the time that an individual with a disability requests reassignment as a reasonable accommodation. The employer, however, *knows* that an equivalent position for which the individual is qualified, will become vacant next week. Under these circumstances, the employer should reassign the individual to the position when it becomes available.

*Id.* (emphasis added).

While the Court recognizes that the timeframes at issue here are significantly longer than a week, the totality of the circumstances in this case could lead a jury to find that, at least, the August job became vacant within a reasonable amount of time. It opened only 80 days after the City fired Hutchinson. Hutchinson

- 8 -

understood—and informed the City of his understanding—that his unpaid leave status could endure either 90 or 120 days, pursuant to City policy.  (Doc. 19-19 at 3.)  Thus, had the City allowed him to take unpaid leave for 90 days, it could have reassigned him to the August job before his leave ended.  Furthermore, the Court finds the Commission's reference to the employer's knowledge to be particularly striking when applied to this case.  Here, the totality of the circumstances surrounding the June 11, 2018 accommodation-turned-termination meeting could lead a reasonable juror to conclude that the City knew that a sedentary position would soon become available but concealed it from Hutchinson and fired him instead.

True, the case is probably weaker when it comes to the reasonableness of the timeframe between Hutchinson's termination and the December job opening.  Still, that weakness is one of weight, not relevance.  As already noted, Hutchinson understood that the City would cap unpaid leave at 120 days.  However, the City's policy manual indicates that unpaid leave could last anywhere between 180 days and a year.  (Doc. 19-7 at 16, 24.)  Again then, had the City granted Hutchinson a longer period of unpaid leave, the December job could have become available before his leave ended.

Therefore, the Court concludes that the timeframe between Hutchinson's firing and the job openings does not render them irrelevant.  Hutchinson could

proffer evidence showing that, had the City granted him unpaid leave, his leave would have permitted him, "upon his return, to perform the essential functions of the [clerical] jobs." *See Humphrey*, 239 F.3d at 1135–36.

Even so, the City goes on to argue the jobs openings' irrelevance based on Hutchinson's failure to apply for either open position. (Docs. 35 at 4; 50 at 4.) Specifically, that Hutchinson did not apply for either job "conclusively demonstrates that he cannot meet his burden of showing that either open position was a possible reasonable accommodation." (Doc. 50 at 4.) Thus, any speculation Hutchinson might offer that he could have performed those jobs, with or without accommodation, would "only serve to confuse the issues and mislead the jury." (*Id.* (citing Fed. R. Evid. 403).)

Setting aside that the City's argument on this point rings more reminiscent of a request for summary judgment than a motion in limine, the Court is unpersuaded that it should exclude evidence of the jobs based on Hutchinson's failure to apply for them. Again, the accommodation Hutchinson sought was unpaid leave, and the issue is whether "a leave of absence would reasonably accommodate [Hutchinson's] disability and permit him, upon his return, to perform the essential functions of the [vacant] job." *See Humphrey*, 239 F.3d at 1135–36. Neither of the cases the City cites says that an employee's failure to apply for jobs after he was fired bars him from presenting evidence that he could

have performed those jobs' essential functions upon his return from unpaid leave. (Doc. 50 at 4 (citing *Hamilton v. GlaxoSmithKline*, 414 F.Supp.3d 1286 (D. Mont. 2019) and *Shiring v. Runyon*, 90 F.3d 827 (3d Cir. 1996)).)

Furthermore, evidence beyond Hutchinson's "self-serving speculation" exists in the record to support his position that he could have performed the essential functions of sedentary clerical jobs. (*See* Docs. 33; 50 at 4.) In February 2018, for example, Dr. Haynes suggested as a possible accommodation "[s]it-down jobs for four hours a day [for] two weeks and then increase hours as able." (Doc. 27 at 11.) Additionally, at the meeting that would end in his termination, Hutchinson expressed his eagerness to pursue physical therapy treatments that "might actually show improvement," but had theretofore been stymied by his workers' compensation battle. (Doc. 19-19 at 2.) Of course, the City can attack the credibility of this evidence at trial. But the existence of conflicting evidence on this point does not mean the jury should be precluded from hearing it. Indeed, it is the jury's task to weigh the credibility of relevant evidence. Thus, the Court will not exclude the evidence of the post-termination job openings based on Hutchinson's failure to apply for them.

The City goes on to argue that the job openings are irrelevant and misleading because Hutchinson "has never been released to work in *any* capacity at any time since his termination." (Doc. 35 at 5 (emphasis in original).) Therefore, says the

City, admitting evidence of the jobs would "only serve to confuse and mislead the jury." (Doc. 50 at 6 (Fed. R. Evid. 402, 403).)

Again, though, the issue as it relates to the job openings is whether the accommodation Hutchinson requested—unpaid leave—would have permitted him, "upon his return, to perform the essential functions of [those] [vacant] job[s]." *See Humphrey*, 239 F.3d at 1135–36. That Dr. Haynes did not release Hutchinson to work positions that were never presented for his review does not extinguish the relevance of the August and December jobs as they relate to whether unpaid leave could have plausibly enabled Hutchinson to perform them. *See id.* at 1136. Furthermore, the ADA places the burden on the employer—not the doctor—to decide whether a disabled employee can return to work. *EEOC Enforcement Guidance: Workers' Compensation and the ADA*, EEOC Compl. Man. (CCH), § 902, Vol. II at 6905 (Sept. 3, 1996).[2]

That Dr. Haynes never "released" Hutchinson to work fails to undercut the relevance of sedentary jobs as they relate to Hutchinson's request for unpaid leave.

---

[2] Throughout this case, the City has attacked Hutchinson's and, by implication, the Court's citation to EEOC guidance manuals. (*See, e.g.,* Doc. 50 at 7.) The Court understands that that EEOC guidance documents do not constitute binding authority. However, and as the Supreme Court has observed, "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bragdon v. Abbot*, 524 U.S. 624, 642 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)) (internal quotation marks omitted).

Finally, the City's motion is devoid of authority that prevents Hutchinson

from providing lay testimony regarding his interest in and ability to perform the

August and December clerical jobs.  Both Hutchinson and Dr. Haynes expressed

optimism regarding the efficacy of physical therapy treatment, which Hutchinson

explained that he could pursue while on unpaid leave.  (Doc. 27 at 48–49.)  That

Dr. Haynes testified to Hutchinson's "[un]stable back as of June 11, 2018" does

not irreconcilably contradict Hutchinson's view of the course he would have taken

had the City granted him unpaid leave status.

In sum, the Court does not find the evidence of the job openings irrelevant,

confusing, or misleading on any of the bases the City advances.  Thus, the Court

denies the City's motion to exclude the evidence of the job openings.

## II.   Statements about Exhausting Accrued Leave before Filing for Workers' Compensation Benefits

In its second motion in limine, the City seeks to exclude its "statements that

[] Hutchinson must use his accrued vacation and sick leave before filing a claim

for worker's (sic) compensation benefits for his work-related injury and that he had

to hire counsel to obtain those benefits[.]"  (Doc. 39 at 2.)  The City explains that

the actions it took as it relates to Hutchinson's workers' compensation claim are

irrelevant to "the elements of [] Hutchinson's claims [or] the City's defenses."

(Doc. 40 at 4.)  It goes on to argue that any marginal relevance is substantially

outweighed by the danger of confusing the issues, misleading the jury, and wasting time.  (*Id.* (citing Fed. R. Evid. 403).)

Generally, the Court agrees and will grant this motion, but with a caveat. Whether the City engaged in dilatory or malicious conduct during the workers' compensation proceedings is immaterial to the elements of Hutchinson's discrimination claims.  As stated above, the primary issue in this case is whether Hutchinson is qualified within the meaning of the ADA, and more specifically, whether the City discriminated against him by firing him rather than granting him unpaid leave status.  Thus, the apparent mishandling of the early stages of Hutchinson's workers' compensation claim is not relevant to Hutchinson's instant claims.  And, the Court agrees that any marginal relevance is substantially outweighed by the danger of wasting time and confusing the issues to hack through the weeds of a parallel proceeding.  *See* Fed. R. Evid. 403.

With that said, the Court disagrees that "none of . . . the City's defenses" are implicated by its alleged conduct in Hutchinson's workers' compensation case. (Doc. 40 at 4.)  The Court predicts that the City may blame Hutchinson for the breakdown of the interactive process, as it did in its motion for summary judgment. (*See* Doc. 18 at 19–22.)  That way, even if the jury finds Hutchinson's request for unpaid leave reasonable, the City can argue that it cannot be held liable for failing to grant him the accommodation.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d

1080, 1089 (9th Cir. 2002) (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)) ("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown [in the interactive process].").

To that end, the Court imagines that the City may introduce evidence to imply that Hutchinson bears responsibility for the breakdown.  For example, the City may ask Hutchinson why he felt the need to record the June 11, 2018 "accommodation" meeting.  Or, it may point out Hutchinson's prior testimony that he came to the March 2018 meeting without suggestions and viewed the City Mayor and the City Attorney as "disinterested."  (Doc. 19-2 at 14–15.)  Or, as the City telegraphs in its response to Hutchinson's motion in limine, it may point to an October 2, 2017 evaluation noting that "Hutchinson has been making other employees uncomfortable with harsh demeanor and continued comments regarding legality and his attorney."  (Doc. 49 at 4.)  This is all to say that the City's relationship with Hutchinson did not evolve in a void.  And, should the City head down the path of blaming Hutchinson for the breakdown of the interactive process, the Court may allow Hutchinson to introduce evidence of its conduct in the workers' compensation setting to explain his attitude.

Therefore, as a general matter, the Court agrees that evidence of the City's actions at the beginning of Hutchinson's workers' compensation case is irrelevant

to the discrimination claims he advances here.  However, if the City introduces evidence intended to blame Hutchinson for the breakdown of the interactive process, the Court may grant Hutchinson some latitude to respond with evidence regarding its conduct after he was injured at work.

## III.   Disciplinary Records and Performance Reviews

In his first motion in limine, Hutchinson seeks exclusion of evidence "concerning employee disciplinary actions and/or performance reviews taken by the City . . . of Hutchinson."  (Doc. 44 at 2.)  He points out that the City terminated him "based on [his] inability to perform the essential functions of [police patrol officer] and the lack of accommodations the City can offer to help [him] perform his job," not because of "any alleged deficiencies in his job performance."  (Docs. 45 at 3–4; 10-12 at 3.)  Thus, because the City fired Hutchinson based on his disability and the nonexistence of a reasonable accommodation, any evidence or argument that Hutchinson was an otherwise poor employee is irrelevant, prejudicial, and confusing.  (Doc. 45 at 5 (citing Fed. R. Evid. 402, 403).)  The City responds that "Hutchinson's prior job performance, both as a full-time police officer and during the time he occupied the sedentary, part-time position, would be directly relevant to rebut his contention that he was qualified and capable of performing the duties required of those positions."  (Doc. 49 at 5.)  For the

following reasons, the Court will grant Hutchinson's motion in part and deny it in part.

The City does not dispute that Hutchinson is disabled and that it fired him because of his disability.  (*See* Doc. 10-12.)  Again, as the City deftly states, "whether [] Hutchinson's requested accommodation of leave without pay was reasonable is *the* primary issue in this case."  (Doc. 49 at 9 (emphasis in original).) So because this case lacks the common theme of an employer disclaiming reliance on the employee's disability in deciding to fire him, *McDonnell Douglas* Title VII disparate impact analysis is not triggered.  *See Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1175–76 (9th Cir. 1998.)  Therefore, Hutchinson's concern that "the introduction of [the disciplinary and performance records] would allow the City to advance . . . an *ad hoc*, pretextual justification for its decision to terminate Hutchinson" is confusing—and inapposite—when applied to this case.  (Doc. 45 at 5.)

Rather, this case hinges on whether Hutchinson can prove that he is a qualified individual able to perform the essential functions of the police patrol job or a reassignment position with reasonable accommodation.  *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).  A two-step inquiry determines whether an individual is qualified within the meaning of the ADA:

> We first determine whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." At step two, we determine whether, "with or without reasonable accommodation," the individual is "able to perform the essential functions of such position."

*Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1227–28 (9th Cir. 2020) (quoting 29 C.F.R. § 1630.2(m)).

Here, the first step of the inquiry does not appear to be at issue. (*See* Doc. 49 at 9.) To reuse the example from this Court's previous order, "the first step in determining whether an accountant who is paraplegic is qualified for a certified public accountant (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA." *Id.* (quoting 29 C.F.R. Pt. 1630, app. to § 1630.2(m)). The City does not challenge that Hutchinson's credentials are satisfactory to work either as police patrol officer or in a sedentary clerical position.

Instead, the City argues that Hutchinson's past performance reviews and disciplinary records are relevant to the second prong of the analysis. That is, they purportedly show that Hutchinson is not qualified, even with reasonable accommodation, because he cannot perform the essential functions of either his time-of-injury job or a sedentary clerical position. The problem is that much of the

City's argument reads like a defense to wrongful discharge or retaliation claims, which Hutchinson's allegations are not.  (*See* Doc. 49 at 2–3.)

Specifically, the Court fails to see how performance reviews the City issued between 2010 and 2015—containing contradictory narratives from both Hutchinson and his supervisors—are relevant to the question of whether, in 2018, Hutchinson could perform the essential functions of either the police patrol job or a sedentary clerical position.  (*See* Doc. 45-1 at 2–29.)  And, if the records bear any marginal relevance to Hutchinson's performance when he was injured in 2017 or when he was fired in 2018, it is substantially outweighed by the danger of confusion, prejudice, and wasting time.  *See* Fed. R. Evid. 403.  The records dated between 2010 and 2015 contain both glowing remarks about Hutchinson's personality and professionalism along with plans to improve his traffic quotas and administrative organization.  Guiding the jury through these conflicting reflections of Hutchinson's past performance demands a time-consuming sideshow about unfairly prejudicial events—including interpersonal squabbles—that occurred long before the events that are central to deciding this case.

Therefore, the Court will exclude all performance reviews and disciplinary actions that predate 2017 pursuant to Rules 402 and 403.  (Docs. 45-1 at 2–29.)  However, the Court warns Hutchinson that if he testifies to his unwaveringly

stellar job performance as a police patrol officer prior to his disabling injury, the Court may allow limited use of the pre-2017 evaluations to impeach him.

The Court will also exclude the June 30, 2017 letter from City Mayor Mark Sheets, stating that he had reviewed Hutchinson's performance evaluations "for the past few years" and threatening Hutchinson with termination based on those deficiencies. (Doc. 45-1 at 30–32.) The Court is primarily concerned that this letter will confuse the issues and mislead the jury about why the City fired Hutchinson. Fed. R. Evid. 403. Again, the June 11, 2018 termination letter is clear. The City fired Hutchinson because he was disabled, and no reasonable accommodation existed that would allow him to perform his job. (Doc. 10-12.) This is not a case about a bad worker who was fired because of his bad work, but this letter implies that it is. Accordingly, the Court will exclude the June 30, 2017 letter along with the attached performance plan. (Doc. 45-1 at 30–32.)

The Court denies Hutchinson's motion in limine, however, as it relates to the employee performance evaluation dated March 24, 2017. (Doc. 45-1 at 33–36.) This evaluation reflects Hutchinson's performance as a police patrol officer at the time he was injured in March 2017 and is therefore directly relevant to the question of whether he can perform the essential functions of that job.

For the same reason, the Court also denies Hutchinson's motion in limine regarding the November 2, 2017 "30 Day Assessment on Improvement Plan."

(Doc. 45-1 at 37–40.)  Like the March 2017 performance report on his police patrol work, the November 2017 assessment considers Hutchinson's ability to perform the essential functions of light-duty clerical work analogous to the jobs that opened after his termination.  And, similarly, the evaluation is temporally tethered to Hutchinson's abilities when he was injured and fired.  Thus, the Court will not exclude either the March 24, 2017 evaluation or the November 2, 2017 assessment.  (Doc. 45-1 at 33–40.)

In sum, then, the Court grants Hutchinson's motion as it relates to the following evidence: the September 24, 2010 "Counseling about duty performance" letter; the September 20, 2013 "Employee Performance Evaluation"; the August 3, 2014 "Employee Performance Evaluation"; the August 4, 2015 "Employee Performance Evaluation"; the August 4, 2015 "Record of Employee Counseling"; the August 17, 2015 "Investigative interview" note; the August 20, 2015 "Discipline Hearing" and attachments; the August 27, 2015 "Disciplinary actions letter"; the October 23, 2015 "Employee Performance Evaluation"; and the June 30, 2017 "Performance Improvement Plan" letter.  (Doc. 45-1 at 2–32.)  Again, the Court cautions Hutchinson that any testimony about his job performance prior to 2017 may open the door to impeachment by way of this evidence.  Finally, the Court denies Hutchinson's motion as it relates to the March 24, 2017 "Employee

Performance Evaluation" and the November 2, 2017 "30 Day Assessment on Improvement Plan."  (Doc. 45-1 at 33–40.)

## IV.   Montana Human Rights Bureau Materials

Hutchinson also moves for an order prohibiting the introduction of "the Montana Human Rights Bureau's Final Investigative Report, its Notice of Dismissal and Notice of Right to File Civil Action in District Court, and it[s] May 30, 2019 'No Reasonable Cause' letter."  (Doc. 44 at 2.)  He argues that any probative value the Montana Human Rights Bureau materials may hold is substantially outweighed by the danger of unfair prejudice.  (Doc. 45 at 6–7 (citing Fed. R. Evid. 403).)  The Court agrees.

"[A]n agency's determination that insufficient facts exist to continue an investigation is not *per se* admissible in the same manner as an agency's determination of probable cause."  *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999).  The former determination carries "a much greater risk of unfair prejudice . . . because a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results."  *Id.*  Accordingly, the trial court must "weigh the [agency materials'] prejudicial effect against its probative value pursuant to Rule 403."  *Id.*

Here, the Court finds that the prejudicial effect of the Montana Human Rights Bureau documents substantially outweighs their probative value.  As the

City describes, the Final Investigative Report (Doc. 45-3) is "a detailed, 10-page report which summarizes the positions of both parties, the statements given by primary witnesses . . . and the documents reviewed by the investigator" (Doc. 49 at 8). Essentially, then, the Final Investigative Report summarizes and marshals the very facts and legal arguments that the jury is tasked with independently considering at the trial. What is more, the Final Investigative Report begins with the following recommendation: "Based on my investigation, I find no reasonable cause to believe unlawful discrimination occurred as alleged in Brian Hutchinson's complaint." (Doc. 45-3 at 2.) The Notice of Dismissal (Doc. 45-4) and the "No Reasonable Cause" letter (Doc. 45-5), too, simply iterate the agency's finding that Hutchinson's discrimination claims are without merit. Substantial danger exists that the jury will give too much weight to these materials, or, indeed, substitute the agency's findings for their own. Put another way, these materials carry a substantial risk of invading the province of the jury.

Be that as it may, the City contends that the Final Investigative Report is relevant to prove that Hutchinson never said how long he needed to take unpaid leave in order to return to work. (Doc. 49 at 8.) However, similar evidence on that issue exists elsewhere in the record that carries with it far less prejudicial risk. For example, Hutchinson failed to state the duration of his unpaid leave request in his May 9, 2018 letter. (Doc. 10-10 at 2.) Similarly, he never specifically said at the

June 11, 2018 meeting how long he would like to be placed on unpaid leave status. (Doc. 19-19 at 3.)  Therefore, the relevance of the Final Investigative Report to prove this point is marginal, while the danger of unfair prejudice it carries is substantial.

Accordingly, pursuant to Rule 403, the Court will grant Hutchinson's motion as it relates to the Montana Human Rights Bureau materials.  The City is precluded from introducing the Montana Human Rights Bureau's Final Investigative Report (Doc. 45-3), the Notice of Dismissal and Notice of Right to File Civil Action in District Court (Doc. 45-4), and the May 30, 2019 "No Reasonable Cause Letter" (Doc. 45-5).

### ORDER

For the foregoing reasons, IT IS ORDERED that:

(1)     The City's motion to exclude evidence of the August 2017 and December 2017 job openings (Doc. 34) is DENIED;

(2)     The City's motion to exclude evidence related to its conduct at the beginning of Hutchinson's workers' compensation case (Doc. 39) is GRANTED, with the caveat described in this Order;

(3)     Hutchinson's motion (Doc. 44) to exclude evidence of his disciplinary records and performance reviews is GRANTED in part and DENIED in part, as set out in this Order; and

(4)     Hutchinson's motion (Doc. 44) to exclude the Montana Human Rights

Bureau materials is GRANTED.

Dated this 1st day of February, 2021.

Dana L. Christensen, District Judge
United States District Court